UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AMBER JEWELL, *an individual*, ROBYN
ROBINSON, *an individual,* HOLLI
SAWALLICH, *an individual*, BRANDY
DIPIETRO, *an individual*, CRYSTAL
HEMPEL, *an individual*, COURTNEY
SCHMACHER, *an individual*,

                 Plaintiffs,

     v.

LEGACY HEALTH, *a corporation*,

                 Defendant.

Case No. 3:23-cv-549-AR

**FINDINGS AND
RECOMMENDATION**

_____

**ARMISTEAD, Magistrate Judge**

     Plaintiffs Amber Jewell, Robyn Robinson, Holli Sawallich, Brandy DiPietro, Crystal

Hempel, and Courtney Schumacher[1] bring this action against their former employer, Legacy

Health. Plaintiffs allege that Legacy unlawfully discriminated against them when it denied their

---

[1]    The caption in plaintiffs' Complaint lists "Schmacher" as a plaintiff, but the allegations in
the Complaint spell her name "Schumacher."

Page  1  – FINDINGS AND RECOMMENDATION

requests for religious exemptions to Legacy's mandatory COVID-19 vaccine policy. Plaintiffs assert that Legacy failed to make a good-faith effort to reasonably accommodate their religious beliefs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Oregon's statutory parallel, ORS § 659A.030. (Compl. ¶¶ 15-25, ECF No. 1.)

Legacy moves to dismiss plaintiffs' claims with prejudice under Federal Rule of Civil Procedure 12(b)(6), arguing that four of the six plaintiffs—Jewell, DiPietro, Hempel, and Schumacher—have failed to state a *prima facie* case of religious discrimination. According to Legacy, neither the Complaint nor plaintiffs' requests for vaccine exemptions show a real conflict between plaintiffs' deeply held religious beliefs and Legacy's COVID-19 vaccination policy. Instead, Legacy says, plaintiffs' objections to the vaccine appear to be based in moral, philosophical, or medical beliefs. (Def.'s Mot. at 14-18, ECF No. 4.) Jewell, DiPietro, Hempel, and Schumacher respond that they should not be penalized for failing to articulate their religious beliefs with perfect clarity and precision and that they have sufficiently pleaded sincerely held religious beliefs that conflicted with the vaccine mandate. (Pl.'s Resp. at 4-6, ECF No. 9.) The court concludes that Jewell, DiPietro, and Schumacher have sufficiently alleged a conflict between their *bona fide* religious beliefs and the vaccine mandate, but Hempel has not.

Legacy also moves to dismiss the claims of Jewell, Robinson, Sawallich, DiPietro, and Schumacher because accommodating those plaintiffs' requests would have caused Legacy undue hardship. (Def.'s Mot. at 22.) Plaintiffs, in response, point out that extrinsic evidence cannot be considered at the motion-to-dismiss stage and that Legacy's undue hardship defense is not established by the pleadings. (Pl.'s Resp. at 11.) The court agrees with plaintiffs that Legacy has failed to show undue hardship at this stage.

Page 2  – FINDINGS AND RECOMMENDATION

Accordingly, Legacy's motion to dismiss should be granted in part and denied in part.[2]

**PRELIMINARY MATTERS**

Before reaching the merits of Legacy's motion to dismiss, the court addresses Legacy's request that the court consider materials outside plaintiffs' Complaint in resolving the pending motion. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*

Legacy requests that the court consider eight extraneous materials. (Shaddy-Farnsworth Decl. ¶¶ 2-9, ECF No. 5.) Those materials are: the vaccination exemption requests submitted by plaintiffs Jewell, DiPietro, Schumacher, and Hempel (Exhibits 1-4); Oregon Administrative Rule (OAR) 333-019-1010 issued by the Oregon Health Authority (OHA) (Exhibit 5); the interim final rule from the Centers for Medicare & Medicaid Services (CMS) implementing a federal vaccine requirement for certain healthcare facilities (Exhibit 6); a Center for Disease Control (CDC) PowerPoint discussing vaccine effectiveness (Exhibit 7); and a CDC document that contains two graphs tracking COVID-19 deaths and hospitalizations in Oregon. (Exhibit 8). Legacy argues that the exemption requests are incorporated by reference into plaintiffs' Complaint and that the other materials are judicially noticeable to contextualize Legacy's vaccination policy and support its undue hardship defense. (Def.'s Mot. at 3, 16.) Plaintiffs respond that the CDC documents are not noticeable because they contain data that is subject to

---

[2]    The parties request oral argument. The court, however, does not believe that oral argument would help resolve the pending motion. *See* LR 7-1(d)(1).

reasonable dispute. (Pls.' Resp. at 8.)

A.    *Judicial Notice*

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is not subject to reasonable dispute." *Khoja*, 899 F.3d at 999 (quotation marks omitted). A fact not subject to reasonable dispute is one that is either "generally known" or can be "readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(1)-(2).

Legacy proposes that the court take notice of OAR 333-019-1010—a rule that permanently codified three temporary administrative orders issued by OHA in August and September 2021. *See* OREGON HEALTH AUTHORITY, PH 11-2022 (Jan. 31, 2022).[3]  Together, those temporary orders required that health care providers and staff be vaccinated against COVID-19 or receive a medical or religious exemption, and provided a form for healthcare workers seeking exemptions. *See* PH 34-2021 (effective August 5, 2021); PH 38-2021 (effective August 25, 2021); and PH 42-2021 (effective September 1, 2021). Legacy also asks the court to take notice that CMS later imposed similar vaccination requirements on Medicare- and Medicaid-certified providers. (*See* Exhibit 6 (*Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61,555 (Nov. 5, 2021)).)

Courts "routinely take judicial notice of . . . records and reports of administrative bodies." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843 n.10 (9th Cir. 2016) (quotation marks omitted). Administrative orders are generally noticeable because they are "already part of the public

---

[3]    OAR 333-019-1010 was suspended on May 10, 2023. *See* OREGON HEALTH AUTHORITY, PH-28-2023.

record, and are therefore capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *DCIPA, LLC v. Lucile Slater Packard Child.'s Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1048 (D. Or. 2011); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities."). Plaintiffs do not dispute that the Oregon administrative orders existed and applied to Legacy during the time when plaintiffs submitted, and Legacy rejected, their religious exception requests. Accordingly, the court takes judicial notice of OAR 333-019-1010. The court also takes notice of Exhibit 6 for the fact that Legacy was later subject to a federal vaccination requirement.[4]

Legacy also asks the court to take notice of a CDC PowerPoint presentation (Exhibit 7) and a CDC document containing two graphs that track trends in COVID-19 deaths in Oregon (Exhibit 8). It requests notice of those documents to establish that "[t]he well-established medical and scientific consensus is that the vaccines are safe and effective, and it is irrefutable that, at the time Plaintiffs were terminated, the vaccines provided *some* safety benefit at a time when COVID-19 hospitalizations were exploding in the United States and Oregon." (Def.'s Mot. at 23.) To do so would require the court to notice the CDC documents for the truth of their conclusions, rather than for the fact of their existence.

"Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, *not* whether the contents of those [documents are] in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

---

[4]    The federal regulation has little, if any, relevance to Legacy's motion because Legacy denied each exemption request in September 2021 and plaintiffs' employment with Legacy ended on or about October 19, 2021. (Compl. ¶¶ 5-10; Def.'s Mot. at 10.)

(emphasis added). Plaintiffs argue that the court may not judicially notice the facts contained within the CDC documents, because those facts are subject to reasonable dispute. (Pls.' Resp. at 8 ("[T]hese are substantive, much-debated data that different experts have different views on across the spectrum.").) The court agrees that the facts contained within the CDC documents are not judicially noticeable. *See Khoja*, 899 F.3d at 1000 (holding that district court abused its discretion in judicially noticing agency report—a document "typically susceptible to judicial notice"—for facts that were subject to reasonable dispute); *MacDonald v. Or. Health & Sci. Univ.*, 689 F. Supp. 3d 906, 916-17 & n.6 (D. Or. 2023) (declining to take judicial notice of exhibits where defendants sought "judicial notice of the[] exhibits for their truth, not for the fact of their existence"). And because it is not appropriate to take judicial notice of the CDC documents for the truth of their facts, the court will not consider Legacy's arguments that rely on those facts. (*See* Def.'s Mot. at 23-24 & n.12 (relying on disputed facts about vaccine safety and efficacy to assert that allowing plaintiffs to continue working while unvaccinated would have resulted in undue hardship as a matter of law).)

The court also declines to notice the documents "as an indication of what information was in the public realm at the time." *Von Saher*, 592 F.3d at 960. Legacy neither asks the court to notice the documents for that purpose nor argues that the mere existence of the documents is relevant to the pending motion. (*See* Def.'s Mot. at 23-24.) In any case, Legacy has not shown that the documents were in the "public realm" during the relevant time. The graphs in Exhibit 8 incorporate data from May 2023 and thus could not have existed in 2021. (ECF No. 5-8.) And, although the PowerPoint is dated July 29, 2021, there is no indication that the document was made public on that date. (*See* ECF No. 5-7.) Indeed, several pages of that document caution that

the information is "CONFIDENTIAL – preliminary data, subject to change." (*Id.* at 4, 8, 10, 17.)

Accordingly, the court declines to take judicial notice of the CDC documents at this stage.

**B.**    ***Incorporation-by-Reference***

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents

as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. A document is subject

to incorporation-by-reference if it "forms the basis of the plaintiff's claim." *United States v.*

*Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A document forms the basis of a claim if that claim

"necessarily rel[ies] on the contents" of the document. *Gershfeld v. TeamViewer US, Inc.*, Case

No. 21-55753, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (documents formed the basis of

plaintiff's claims because "the viability of [his] claims [were] dependent upon the extent and

sufficiency of [...] the disclosures form"); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031,

1038 (9th Cir. 2010) (documents evidencing an agreement were considered "integral to the

Amended Complaint" where resolution of plaintiff's claim "depend[ed] in large part on" what

the agreement between the parties said). Incorporation-by-reference does not apply where "the

document merely creates a defense to the well-pled allegations in the complaint" or where the

relevance and authenticity of the material is disputed. *Khoja*, 899 F.3d at 1002; *Coto Settlement*,

593 F.3d at 1038.

Plaintiffs allege that Legacy failed to accommodate their religious beliefs when it denied

their requests for exemptions to the vaccine policy. (Compl. ¶¶ 18-19, 23-24.) To establish a

*prima facie* case of religious discrimination for failure to accommodate, each plaintiff must show

that "(1) [s]he had a *bona fide* religious belief, the practice of which conflicts with an

employment duty; (2) [s]he informed h[er] employer of the belief and conflict; and (3) the

employer discharged, threatened, or otherwise subjected h[er] to an adverse employment action."
*Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006).

Plaintiffs Jewell, DiPietro, Hempel, and Schumacher rely on the exemption requests that they submitted to Legacy to show that they informed Legacy of their religious beliefs that conflicted with the vaccine requirement. (Compl. ¶¶ 5, 8-10 (alleging that each plaintiff submitted an exemption request and identifying no other means of notifying Legacy of plaintiffs' religious beliefs that conflicted with the vaccine mandate); *see also* Pls.' Resp. at 7-8 ("Plaintiffs' respective requests make clear . . . that their religious beliefs were in direct conflict with taking the COVID-19 vaccines.").)

Because plaintiffs rely on the exemption requests to establish an element of their failure-to-accommodate claims, the requests form the basis of those claims. And plaintiffs do not dispute the authenticity or relevance of the exception requests that Legacy offers as Exhibits 1-4. (*See* Pls.' Resp. at 7-8.) The court therefore concludes that the exemption requests are incorporated by reference into the Complaint, and it will consider those requests alongside the Complaint in assessing Legacy's Motion to Dismiss.

## LEGAL STANDARD

A court will grant a Rule 12(b)(6) motion to dismiss for failure to state a claim when a claim is unsupported by a cognizable legal theory or when the complaint is without sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Assessing the sufficiency of a complaint's factual allegations requires the court to (1) accept that plaintiff's well-pleaded material facts alleged in the complaint are true; (2) construe factual allegations in the light most favorable to

plaintiff; and (3) draw all reasonable inferences from the factual allegations in favor of plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). A plaintiff's legal conclusions that are couched as factual allegations, however, need not be credited as true by the court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Plausibility is the plaintiff's keystone to surviving a motion to dismiss. That is, a complaint's factual allegations must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plausibility is not probability, but plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Plaintiffs worked for Legacy in the summer of 2021, when Legacy implemented a requirement that its employees get vaccinated against COVID-19. Legacy's vaccine policy allowed employees to seek religious or medical exemptions. Each plaintiff has deeply held

Christian beliefs, and each plaintiff submitted a request for a religious exception to the vaccine mandate. Legacy denied their requests. (Compl. ¶¶ 5-10.)

A.    *Amber Jewell*

Jewell worked as a certified nursing assistant for four years at Legacy-Meridian Park Hospital in Tualatin, Oregon. She worked in the surgical and orthopedic areas of the hospital until elective surgeries were cancelled because of the COVID-19 pandemic, when she began working directly with COVID-19 patients. She complied with Legacy's policies to reduce the spread of COVID-19, including wearing personal protective equipment (PPE). For Jewell, her deeply held Christian beliefs include a belief that her body is a temple and taking the vaccine would violate her bodily integrity. (Compl. ¶ 5.) When Legacy mandated COVID-19 vaccinations as another preventive measure, Jewell submitted a religious exemption and accommodation request, explaining:

> Please be advised that the covid vaccine violates my deeply held religious convictions. I have been a Christian most of my life and I believe that as I have spent time in prayer I have heard God say not to get the COVID vaccine. 1 Corinthians 6:19-20 "Or do you not know that your body is a temple of the Holy Spirit within you whom you have from God? You aren't your own, for you were bought with a price. God created our physical bodies, therefore making it good and precious from the start." I believe what the Bible says about my body being a temple and therefore since I have heard God tell me to not take this vaccine, I am obeying God in what He has told me.

(Shaddy-Farnsworth Decl., Ex. 1 at 2). Legacy denied her request and fired her on October 19, 2021. (Compl. ¶ 5.)

\ \ \ \ \

\ \ \ \ \

**B.**    *Robyn Robinson*

Robinson worked for Legacy as a registered nurse for nine years. At the beginning of the

COVID-19 pandemic, Robinson worked on the surgical floor, sometimes without PPE. When

Legacy implemented the vaccine mandate, she submitted a religious exemption request because

of her deeply held Christian beliefs. Robinson believes in the "sanctity of life" and that the

COVID-19 vaccines were tested on or used aborted fetal cell lines. Legacy denied Robinson's

request on September 27, 2021. Robinson does not specify whether Legacy fired her, although

she alleges "loss of her career" and that she has been unable to find a permanent position. (*Id.*

¶ 6.)

**C.**    *Holli Sawallich*

Sawallich, a registered nurse at Legacy Emanuel Medical Center for over seven years, is

Catholic and believes in the sanctity of life. Like Robinson, she believes that the COVID-19

vaccines were developed or tested on aborted fetal cell lines. She requested a religious

exemption from Legacy's vaccine requirement. Legacy denied her request on September 28,

2021, placed her on unpaid leave on October 1, and fired her on October 19. (*Id.* ¶ 7.)

**D.**    *Brandy DiPietro*

 DiPietro worked as a registered charge nurse in Legacy Mount Hood's emergency

department for three years. DiPietro has strong religious beliefs that prevented her from getting

the COVID-19 vaccine. (*Id.* ¶ 8.) In August 2021, she requested a religious exemption from the

vaccine requirement:

> I, Brandy DiPietro, do hereby swear and affirm that I am a member
> of a recognized religious organization and on this basis,
> immunization requirements volate [*sic*] my right to freely exercise
> my religion as guaranteed by the first amendment of the

constitution of The United States of America. I am asserting my
rights to an exemption from vaccines based on the following;

Per the US equal employment opportunity commission (EEOC)
which enforces federal laws prohibiting employment
discrimination, employers MUST offer religious and disability
accommodations to vaccine requirements.

I am a Christian who believes in the words of the bible. I am
objecting to vaccines because I believe in and follow God and the
principles laid out by his word, The Holy Bible, and I have a
deeply held belief that some vaccines violate them.

Vaccine mandates in order to gain, maintain or the threat of loss of
employment due to me upholding my beliefs is an infringement on
my constitutional rights as well as my God appointed requirement
to protect the physical integrity of my body and harm to my
conscience.

(Shaddy-Farnsworth Decl., Ex. 2 at 2). Legacy denied DiPietro's request, placed DiPietro on

unpaid leave on September 30, and then fired her. (Compl. ¶ 8.)

**E.**    ***Crystal Hempel***

Hempel worked for Legacy's Randall Children's Hospital as registered nurse. She

worked remotely except for one shift every six weeks. At the start of the pandemic, Hempel

began working entirely from home when her in-person shifts were cancelled. When Legacy

imposed its COVID-19 vaccine mandate, Hempel had been working entirely from home for

more than a year. On August 20, 2021, Hempel submitted a request for a religious exemption

from the vaccine requirement, indicating that her religious beliefs were the basis for her request.

She did not provide any description of her religious belief or how they conflicted with the

vaccine requirement. (Shaddy-Farnsworth Decl. Ex. 4). Legacy denied the request, placed her on

unpaid leave on September 30, 2021, and then fired her. (Compl. ¶ 9.)

\ \ \ \ \

Page 12  – FINDINGS AND RECOMMENDATION

**F.**    *Courtney Schumacher*

Courtney Schumacher worked for Legacy as a client services representative for more

than two years. She is a Christian who holds "sincere, deep beliefs about the sanctity of her body

and human life." (*Id*. ¶ 10.) When Legacy Health required COVID-19 vaccines for its

employees, Schumacher applied for a religious exemption, explaining:

> Our bodies are templ[es] of the holy spirit. I will not inject or
> administer any substance into my body which Alters or inhibits my
> miraculous immune system created by god. God created the body
> to heal itself. God provided everything necessary to live, recover,
> and grow.

(Shaddy-Farnsworth Decl., Ex. 3). Legacy denied her request and fired her on October 19, 2021.

(Compl. ¶ 10.)

**DISCUSSION**

Title VII makes it unlawful for an employer "to discharge any individual … because of

such individual's … religion[.]" 42 U.S.C. § 2000e–2(a)(1). Likewise, ORS § 659A.030 makes it

unlawful under Oregon law to "discharge [any] individual from employment" because of the

"individual's … religion." For Title VII religious claims, the "term 'religion' includes all aspects

of religious observance and practice, as well as belief, unless an employer demonstrates that he is

unable to reasonably accommodate to an employee's … religious observance or practice without

undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). ORS chapter

659A does not define "religion," but plaintiffs' state-law claims under ORS § 659A.030 are

analyzed the same way as their Title VII claims. *See Pullom v. U.S. Bakery*, 477 F. Supp. 2d

1093, 1100 (D. Or. 2007) ("Because O.R.S. 659A.030 is modeled after Title VII, plaintiff's state

law discrimination claim can be analyzed together with her federal discrimination claim.");

*Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 n.2 (9th Cir. 1993).

**A.    *Whether Plaintiffs Have Sufficiently Pleaded Bona fide Religious Beliefs that Conflict with the Vaccine Mandate***

To establish religious discrimination under Title VII and ORS 659A.030 based on a failure to accommodate theory, each plaintiff must plead that (1) she had a *bona fide* religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer discharged her because of her inability to fulfill the job requirement. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004).

"The Supreme Court has, albeit in the free exercise context, cautioned against second-guessing the reasonableness of an individual's assertion that a requirement burdens her religious beliefs, emphasizing that a court's 'narrow function … in this context is to determine whether the line drawn reflects an honest conviction.'" *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (internal quotation marks omitted)). "[T]he resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd.*, 450 U.S. 707, 714 (1981). Although "the burden to allege a conflict with religious beliefs is fairly minimal," courts need not "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value" and must still ask "whether [a plaintiff] has alleged an actual conflict." *Bolden-Hardge*, 63 F.4th at 1223 (citations omitted). Courts must also distinguish between conflicts that are "rooted in religious belief" as opposed to those based on "'purely secular' philosophical concerns."

*Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

Here, Legacy argues that Jewell, DiPietro, Hempel, and Schumacher have failed "to plead facts sufficient to show that they had religious beliefs that conflicted with Legacy's vaccination policy." (Def.'s Mot. at 13.). In its view, all four have allegations as to their sincerely held religious beliefs that are "sparse at best." (*Id*. at 15.) Further as to Jewell, DiPietro, and Schumacher, Legacy asserts that their alleged beliefs regarding the scientific and medical efficacy of the vaccines or their personal medical conditions are not religious in nature. For that argument, Legacy relies on a case from a court in the Western District of Wisconsin, *Passarella v. Aspirus, Inc.*, Case No. 22-cv-287-jdp, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 9, 2023), in which the court observed that the "use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion"; a case from a court in the District of Massachusetts, *Brox v. Hole*, 590 F. Supp. 3d 359, 366 (D. Mass. 2022), *aff'd in part, vacated in part, remanded*, 83 F.4th 87 (1st Cir. 2023), in which the court concluded that plaintiffs' "opposition to receiving the COVID-19 vaccine was based primarily on philosophical, medical, or scientific beliefs, or personal fears or anxieties rather than *bona fide* religious practices" (internal quotation marks omitted); and findings and recommendation from a court in this district, *Quinn v. Legacy Health*, Case No. 3:23-cv-00331-JR, 2023 WL 10354251, at *9-10 (D. Or. June 16, 2023), in which the court relied on the *Passarella* and *Brox* district court decisions to conclude that the plaintiffs' allegations, which centered on a belief that their bodies are temples, were insufficient.

Before turning to Legacy's "sparse at best" argument, the court addresses—and rejects—Legacy's argument that some of the plaintiffs' allegations are secular beliefs couched in religious belief and therefore insufficient to plead a conflict between receiving the COVID-19 vaccine and a sincerely held religious belief. Although it is true that "Title VII does not protect secular preferences" such as medical, political, and social preferences, *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998), the term religion includes "all aspects of religious observance and practice, as well as belief," *id*. (quoting 42 U.S.C. § 2000e(j)). As the Seventh Circuit observed when it reversed the district court decision on which Legacy relies—*Passarella*—an employee may object to an employer's vaccine mandate on religious *and* non-religious grounds. That is because "Congress permitted this, as we see no other way to give effect to the breadth of its definition of 'religion'—as covering 'all aspects' of an employee's religious observance, practice, and belief." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024). The plaintiffs in *Passarella* "connect[ed]" their objections to the vaccine with their Christian beliefs: that was sufficient at the pleading stage to make them religious within the meaning of Title VII. *Id*.

That approach is not unlike the Ninth Circuit's view of the free exercise of religion in *Callahan* where the court noted that "a coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one." 658 F.2d at 684 (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1977)). For the same reason, this court is unpersuaded by the reasoning in *Brox*: the court will not engage in the exercise of making determinations as whether a belief is *primarily* secular rather than a *bona fide* religious belief. The court also observes that the district judge, in reversing (in part) the magistrate judge's findings and

recommendation in *Quinn*, remarked that, "although at least part of her objection to the vaccine appears to be rooted in a medical preference not to take an 'experimental' vaccine, she alleges that she is a Christian and that her opposition to vaccination stems, at least in part, from a belief that the Christian Bible forbids her to receive the vaccine." *Quinn v. Legacy Health*, 2024 WL 620344, at *2 (D. Or. Feb. 13, 2024).

That parts of the religious exemption requests in this case similarly may have both religious and secular reasons does not defeat the sincerity of their religious belief. Jewell's belief of the "body being a temple," DiPietro's belief that she "protect the physical integrity" of her body, and Schumacher's belief that to "inject or administer any substance into [her] body … [a]lters or inhibits [her] miraculous immune system"—to the extent that they are secular beliefs—can coexist with their stated Christian beliefs.

The court turns to Legacy's argument that the allegations by Jewell, DiPietro, Hempel, and Schumacher are insufficient to explain the conflict between their Christian beliefs and complying with Legacy's COVID-19 vaccination mandate. The court agrees with Legacy as to Hempel but disagrees as to Jewell, DiPietro, and Schumacher. Before turning to each of those plaintiffs, the court emphasizes that the standard for pleadings requires it to construe the pleaded facts as true and in the light most favorable to plaintiffs, as well as draw reasonable inferences from the factual allegations in favor of plaintiff. *Wilson*, 668 F.3d at 1140. Those requirements, in turn, go to determining whether it is *plausible* that a plaintiff is entitled to relief. *Starr*, 652 F.3d at 1216.

*Jewell.* Jewell has deeply held Christian beliefs, one of which is that her body is a temple and taking the vaccine would violate her bodily integrity. (Compl. ¶ 5.) In the letter

accompanying her accommodation request, Jewell stated her Christian faith, quoted a passage

from the Bible, and wrote that, when she had spent time in prayer, she "heard God say not to get

the COVID vaccine." (Shaddy-Farnsworth Decl. Ex. 1 at 2.) Jewell's allegations in the

Complaint and her incorporated-by-reference accommodation request suffices to adequately

plead an actual conflict between the vaccine requirement and her *bona fide* religious beliefs. *See*

*Keene v. City and County of San Francisco*, Case No. 22-16567, 2023 WL 3451687, at *2 (9th

Cir. May 15, 2023)* ("A religious belief need not be consistent or rational to be protected under

Title VII, and an assertion of a sincere religious belief is generally accepted.").

 *DiPietro*. DiPietro "has strong Christian beliefs that prevented her from taking the

vaccine." (Compl. ¶ 8.) Her exemption request provided that

> I am a Christian who believes in the words of the bible. I am objecting to vaccines
> because I believe in and follow God and the principles laid out by his word, The
> Holy Bible, and I have a deeply held belief that some vaccines violate them.
>
> Vaccine mandates in order to gain, maintain or the threat of loss of employment
> due to me upholding my beliefs is an infringement on my constitutional rights as
> well as my God appointed requirement to protect the physical integrity of my
> body and harm to my conscience.

(Shaddy-Farnsworth Decl. Ex. 2 at 2.)

 DiPietro's allegation and exemption request stating her belief that vaccines violate the

principles laid out in the Bible and that she has a deeply held belief that vaccines violate those

Christian principles permit a reasonable inference that the practice of her *bona fide* religious

belief conflicts with Legacy's COVID-19 vaccination mandate. Although not a model of clarity,

her statement is nevertheless sufficient at the pleading stage to state a facially plausible claim for

relief. *See Quinn*, 2024 WL 620344 at *2 ("Although the development of the factual record may

later illuminate in greater detail [plaintiffs'] religious convictions and their relationship, if any, to

Page 18  – FINDINGS AND RECOMMENDATION

the requirement to receive the COVID-19 vaccine, at this stage in the proceedings the minimal pleadings are sufficient to state a claim.").

*Hempel*. Although Jewell's and DiPietro's allegations are sufficiently pleaded to state a religious conflict, Hempel's are not. Her vaccination request merely checked a box that indicated that her request was based on a religious belief. And in the Complaint, she alleges only that she "requested a religious exception from the COVID-19 vaccine due to her strongly held Christian beliefs," and that she "held sincere and profound religious beliefs that prevented [her] from being able to take the COVID-19 vaccine[]." (Compl. ¶¶ 4, 9.) Hempel has failed to describe what religious beliefs prevent her from taking the COVID-19 vaccine. Consequently, she has not sufficiently pleaded the conflict between her religious belief and employment duty. *See Kather v. Asante Health Sys.*, Case No. 1:22-cv-01842-MC, 2023 WL 4865533, at *5 (D. Or. July 28, 2023) (observing that "vague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment obligations.").

*Schumacher.* Along with the Complaint's allegation that Schumacher requested a religious exemption to the vaccine requirement "due to her strongly held Christian beliefs" (Compl. ¶ 4), Schumacher's exemption request also explains that "God created the body to heal itself" and that she will not "inject or administer any substance into [her] body which [a]lters or inhibits [her] miraculous immune system." (Shaddy-Farnsworth Decl. Ex. 3 at 1.) Like Jewell and DiPeitro, Schumacher has plausibly alleged that her sincerely held religious beliefs conflict with Legacy's vaccination requirement.

*Leave to Amend*. "Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th

Cir. 2009) (quotation marks omitted). Although Hempel's accommodation request, together with her allegations in the Complaint, do not allege sufficient facts to allow the court reasonably to infer that there was an actual conflict between her *bona fide* religious beliefs and the vaccine requirement, it is possible that her claims can be saved with additional factual allegations describing the conflict.

That is because, in assessing the sufficiency of plaintiffs' allegations, the court must consider "the Complaint alongside the exemption request incorporated by reference." *DeVito v. Legacy Health*, Case No. 3:22-cv-01983-YY, 2024 WL 687943, at *2 (D. Or. Feb. 19, 2024) (considering both the notice provided to the employer and additional factual allegations in complaint in assessing whether plaintiff had alleged a conflict between her *bona fide* religious belief and the vaccine mandate). Although the conflict that a plaintiff relies on to meet the first element of her *prima facie* case must be the same conflict of which she notified her employer,[5] Hempel is not limited to the facts described in their exemption requests and can allege more facts consistent with the contents of those requests. *See id.* (noting that, "although the contents of Plaintiff's exemption request may be relevant to the second element of Plaintiff's *prima facie* case (whether defendant was informed of Plaintiff's religious belief and conflict), that element is not the basis of Defendant's motion"); *Heller,* 8 F.3d at 1439 (concluding that employee had alleged *prima facie* case and rejecting employer's argument that employee had not provided proper notice of his belief and conflict, where employee never described to his employer the nature of the ceremony that he had to miss work to attend; to meet notice element, plaintiff need

---

[5]    *See Peterson*, 358 F.3d at 606; *Craven v. Shriners Hospitals for Children*, Case No. 3:22-cv-01619-IM, 2024 WL 21557, at *4 n.3 (D. Or. Jan. 2, 2024) (so stating).

only provide "enough information about his religious needs to permit the employer to understand *the existence of a conflict* between the employee's religious practices and the employer's job requirements" (emphasis added)) (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 900 (7th Cir. 1978) (informing employer that "I [am] not able to work on Saturday because of my religious obligation" is sufficient to meet notice element)). Because it is possible that Hempel's claims could be corrected with additional factual allegations, she should be given leave to amend her claims.[6]

**B.    *Undue Hardship***

Legacy argues that the court should dismiss the claims of Jewell, DiPietro, Sawallich, Robinson, and Schumacher because accommodating their requests would have caused Legacy undue hardship. As the Supreme Court recently clarified, to establish undue hardship, an employer must "show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

Undue hardship is an affirmative defense to a claim for failure to accommodate. *Bolden-Hardge*, 63 F.4th at 1224. Accordingly, "dismissal on that ground is proper only if the defendant

---

[6]    Legacy contends in a footnote that it could not legally have accommodated plaintiffs' requests because the forms they submitted did not comply with the OHA's requirement that a religious exemption include documentation "describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual." OAR 333-019-1010(4)(b)(B); (Def.'s Mot. at 18 n.8). But nothing in that Rule prevented Legacy from requesting additional documentation from employees whose accommodation requests it found deficient. Accordingly, Legacy has not shown that it was "not legally permitted" (Def.'s Mot. at 18 n.8) to accommodate plaintiffs' requests because they did not contain the content required by the Rule.

shows some obvious bar to securing relief on the face of the complaint or in any judicially

noticeable materials." *Id.* (quotation marks and citations omitted). Determination of whether a

particular accommodation would have posed an undue hardship is a factual inquiry that "must be

determined within the particular factual context of each case." *Balint v. Carson City, Nev.*, 180

F.3d 1047, 1054 (9th Cir. 1999); *accord. Groff*, 600 U.S. at 473 (describing the "undue-hardship

standard" as a "context-specific standard").

      In Legacy's view, this court can determine as a matter of law that any accommodation of

plaintiffs' requests would have imposed an undue hardship. Legacy points out that plaintiffs

(besides Hempel) all provided direct patient care while they worked at Legacy. Allowing them to

work while unvaccinated, Legacy says, would have caused safety risks. (Def.'s Mot. at 22.)

Further, OAR 333-019-1010 imposed on Legacy the obligation to "take reasonable steps" to

prevent its unvaccinated workers "from contracting and spreading COVID-19." So, by

accommodating plaintiffs' requests,

> Legacy would have faced a dilemma in which any outcome would
> have unavoidably resulted in an undue hardship: (1) Legacy avoids
> incurring additional costs by declining to take "reasonable steps"
> to protect employees but, in doing so, violates OAR 333-019-1010
> which constitutes an undue hardships; or (2) Legacy avoids
> violating OAR 333-019-1010 by taking "reasonable steps" to
> protect employees but, in doing so, necessarily incurs additional
> costs that themselves constitute an undue hardship.

(Def.'s Mot. at 28.)

      The court agrees that, if accommodating plaintiffs' requests would have caused Legacy to

violate Oregon law, it would have imposed undue hardship. *Sutton v. Providence St. Joseph*

*Med. Ctr.*, 192 F.3d 826, 830-31 (9th Cir. 1999) ("[A]n employer is not liable under Title VII

when accommodating an employee's religious beliefs would require the employer to violate

federal or state law… the existence of such a law establishes 'undue hardship.'").

But, as Legacy acknowledges, it also had the option to "take reasonable steps to ensure"

that its unvaccinated healthcare staff were "protected from contracting and spreading COVID-

19." OAR § 333-019-1010(4). Legacy contends that any reasonable steps would have necessarily

caused it to incur additional costs, as Legacy would have needed to monitor unvaccinated

employees' compliance with safety protocols. The burden of doing so, Legacy says, would have

"significantly[] change[d] the nature of the conduct of Legacy's business." (Def.'s Mot. at 27.)[7]

But the pleadings, together with materials the court has judicially noticed, do not demonstrate

that any reasonable steps Legacy could have taken would necessarily have resulted in

"substantial increased costs in relation to the conduct of [Legacy's] particular business." *Groff*,

600 U.S. at 470; *see also Brown v. NW Permanente*, Case No. 3:22-cv-986-SI, 2023 WL

6147178, at *4 (D. Or. Feb. 8, 2023) (denying employer's motion to dismiss based on undue

hardship because perfusionists' complaint "[did] not *itself* establish the affirmative defense of

undue hardship"); *MacDonald*, 689 F. Supp. 3d. at 919 (explaining that employer's conclusory

assertions about time and resources it would have to expend to accommodate nurse's vaccine

exemption request did not establish undue hardship, particularly "in light of any existing

precautions that [employer] might have been practicing" when nurse submitted exemption

---

[7]       To support its contention that undue hardship is evident from the pleadings, Legacy
points to Judge Simon's statements and questions during oral argument in *Brown v. NW
Permanente*, Case No. 3:22-cv-986-SI (D. Or. Feb. 8, 2023). After oral argument, however,
Judge Simon concluded that undue hardship was not evident from the materials the court could
properly consider at the motion-to-dismiss stage. 2023 WL 6147178 (D. Or. Sept. 20, 2023).

Page 23  – FINDINGS AND RECOMMENDATION

request). At a later stage of the case, Legacy may be able to establish that any reasonable steps would have imposed on it an undue hardship. But it has not met that burden at this stage.

## CONCLUSION

For the above reasons, Legacy's motion to dismiss (ECF No. 4) should be GRANTED IN PART and DENIED IN PART.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within fourteen days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: September 18, 2024

_____
JEFF ARMISTEAD
United States Magistrate Judge